**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHANNON O'NEILL,<br><br>                Plaintiff,<br><br>v.<br><br>ORTHOFIX MEDICAL INC., CATHERINE BURZIK, WAYNE BURRIS, JASON HANNON, JAMES HINRICHS, LILLY MARKS, MIKE PAOLUCCI, JON SERBOUSEK, JOHN SICARD, and THOMAS WEST,<br><br>                Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shannon O'Neill ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Orthofix Medical Inc. ("Orthofix" or the "Company") and the members of Orthofix's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge the Company with SeaSpine Holdings Corporation ("SeaSpine") (the "Proposed Transaction").

2. On October 10, 2022, the Company entered into an Agreement and Plan of Merger with SeaSpine and Orca Merger Sub Inc. ("Merger Sub") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, SeaSpine stockholders will receive 0.4163 shares of Orthofix common stock for each SeaSpine common share. Upon closing of the Proposed Transaction, SeaSpine stockholders will own approximately 43.5%, and Orthofix stockholders will own approximately 56.5% of the combined company.

3. Under the Merger Agreement, Orthofix is required to issue approximately 16.6 million additional shares of Orthofix common stock (the "Share Issuance"). As a Nasdaq listed company, Orthofix is required by Nasdaq listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock. Thus, the Proposed Transaction is contingent upon Orthofix shareholders voting to approve the proposed Share Issuance.

4. On November 23, 2022, the Board authorized the filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC. Specifically, the Prospectus, which recommends that Orthofix stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Orthofix and SeaSpine; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Perella Weinberg Partners LP ("Perella").

5. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Orthofix stockholders need such information in order to make a fully informed decision in connection with the Share Issuance and Proposed Transaction.

6. The special meeting for Orthofix stockholders to vote on the Share Issuance and Proposed Transaction is currently scheduled for January 4, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Orthofix's other shareholders to make an informed decision whether to vote their shares in favor of the Share Issuance and Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Orthofix's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of Orthofix common stock.

11. Defendant Orthofix is a Delaware corporation, with its principal executive offices located at 3451 Plano Parkway, Lewisville, Texas 75056. Orthofix's shares trade on the Nasdaq Global Select Market under the ticker symbol "OFIX."

12. Defendant Catherine Burzik has been Chair of the Board and a director of the Company at all relevant times.

13. Defendant Wayne Burris has been a director of the Company at all relevant times.

14. Defendant Jason Hannon has been a director of the Company at all relevant times.

15. Defendant James Hinrichs has been a director of the Company at all relevant times.

16. Defendant Lilly Marks has been a director of the Company at all relevant times.

17. Defendant Mike Paolucci has been a director of the Company at all relevant times.

18. Defendant Jon Serbousek has been President, Chief Executive Officer and a director of the Company at all relevant times.

19. Defendant John Sicard has been a director of the Company at all relevant times.

20. Defendant Thomas West has been a director of the Company at all relevant times.

21. Defendants identified in paragraphs 12-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. Orthofix is a global medical device company with a spine and orthopedics focus. Orthofix's spine and orthopedic products are distributed in more than 60 countries via its sales representatives and distributors. Orthofix manages its business by its two reporting segments, Global Spine and Global Orthopedics, which accounted for 77% and 23%, respectively, of its total net sales in 2021.

**The Proposed Transaction**

23. On October 11, 2022, Orthofix announced that it had entered into the Proposed Transaction, stating, in relevant part:

> LEWISVILLE, Texas & CARLSBAD, Calif.--(BUSINESS WIRE)--Oct. 11, 2022-- Orthofix (NASDAQ: OFIX), a global medical device company with a spine and orthopedics focus, and SeaSpine (NASDAQ: SPNE), a global medical technology company focused on surgical solutions for the treatment of spinal disorders, today announced they have entered into a definitive agreement to combine in an all-stock merger of equals.
>
> The combined company, to be named prior to the transaction's closing, will be a leading global spine and orthopedics company with highly complementary portfolios of biologics, innovative spinal hardware, bone growth therapies, specialized orthopedic solutions and a leading surgical navigation system. With products distributed in 68 countries world-wide, approximately 1,600 employees and a global R&D and manufacturing footprint, the new company would have revenues of approximately $693 million as of the twelve months ended September 30, 2022.
>
> Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, SeaSpine shareholders will receive 0.4163 shares of Orthofix common stock for each share of SeaSpine common stock owned. Following the close of the transaction, Orthofix shareholders will own approximately 56.5 percent of the combined company, and SeaSpine shareholders will own approximately 43.5 percent of the combined company, respectively, on a fully diluted basis.
>
> "This transaction significantly advances our mission to deliver innovative, quality-driven solutions that make us a partner of choice for surgeons in their work to improve patient mobility," said Jon Serbousek, Orthofix President and Chief Executive Officer. "The combined company's broad portfolio of technology, expanded commercial capabilities and ability to make greater investments in innovative solutions provide a clear roadmap for sustainable, top-tier growth and increased competitiveness across a broad spectrum of products and services. We look forward to capitalizing on this merger's tremendous value creation opportunities."
>
> Keith Valentine, SeaSpine President and Chief Executive Officer, said, "This transaction brings together two complementary organizations to create an industry leader with the immediate financial strength to self-fund investments that deliver both growth and better patient outcomes. We are excited about the value we can create for the combined company's shareholders, the new opportunities opened for

employees and our ability to now provide surgeons and hospital partners a complete procedural solution using cutting-edge technology at every level."

**Strategic and Financial Benefits of the Merger**

- **An industry leader in spine and orthopedics portfolios.** The combination of Orthofix's and SeaSpine's portfolios will create an innovative suite of offerings in growth segments of spine and orthopedics. The combined company's differentiated technologies will include: the M6-C™ artificial cervical disc, a next-generation artificial disc replacement alternative to spinal fusion; the FLASH™ Navigation System with 7D Technology, which is the only approved image guidance system that utilizes a novel and proprietary camera-based technology and machine-vision algorithms; the Fitbone™ platform, which includes the currently available intermedullary limb lengthening system; the under-development Fitspine™ scoliosis solution; and a comprehensive offering of advanced interbody devices featuring WaveForm® 3D and NanoMetalene® with Reef Topography™ technologies.

- **One of the industry's broadest biologics and regenerative technology offerings.** Together, the combined company's biologics portfolio will represent one of the broadest offerings available, extending the new company's reach to an even greater number of surgeons for use in spine and orthopedics procedures. These biologic solutions include the recently launched Virtuos™ Lyograft, the first-of-its-kind, shelf-stable and complete autograft substitute; the market-leading Trinity™ Elite allograft; the best-in-class OsteoStrand® Plus and OsteoSurge® 300 demineralized bone matrix (DBM) products with patented Accell® Bone Matrix, and the future commercialization of Novosis™, a next generation rh-BMP-2 technology via our recent license agreement with CGBio.

  The combined company's regenerative technologies will include the CervicalStim™ bone growth therapy device, the only FDA-approved PEMF system for cervical treatment; SpinalStim™ for spine fusion; PhysioStim™ for the treatment of nonunion fractures; and the recently launched AccelStim™ bone healing therapy.

- **Differentiated and synergistic enabling technologies.** The combined company will have a complementary portfolio of technologies that enables it to service the full continuum of surgical care from preoperative planning through surgical navigation. Flagship enabling technologies include the unique FLASH™ Navigation System with 7D Technology, which is designed to provide visibility during surgery to improve accuracy of screw placement and provide a cost-effective, rapid, radiation-free solution to surgical navigation, and the OrthoNext™ preoperative planning system.

- **Premier offering in high-growth pediatrics market.** The combined company will have a complementary portfolio of specialized hardware and enabling technologies, including specialized spine, limb deformity, limb reconstruction and software planning and imaging solutions, that enable it to service the full patient continuum of care for pediatric orthopedic surgeons. Currently an $800 million annual market, pediatrics is among the fastest growing markets in orthopedics.

- **Strengthened commercial reach in the United States and internationally.** With its broader product and services portfolio, increased resources and deep pipeline, the combined company will be able to attract and support larger, dedicated distribution partners. It will also be able to invest in direct sales representatives in select markets to engage even more surgeon users.

- **Revenue synergies, cost savings and economies of scale.** The companies have identified meaningful cross-selling revenue synergies as a result of cross-selling the complementary portfolios in the United States, the ability to sell SeaSpine's biologics and 7D technology into Orthofix's international established channels, the greater breadth of bag to support large distributor conversions and increased product offerings per procedure.

In addition, the combination is expected to generate at least $40 million in annualized cost savings not including stock-based compensation within three years following the close of the transaction. Cost savings will be primarily from reductions in redundant overhead and public company costs as well as supply chain efficiencies. Working capital and capital expenditure efficiencies are expected to be driven through economies of scale via higher spinal implant set utilization.

- **Strong financial profile with enhanced opportunities for investment**. The transaction is expected to be accretive to Orthofix's standalone adjusted EBITDA by the second full year after close and is expected to be accretive to our existing return on invested capital after fully realizing synergies, including cost savings. The combined company's strong capital structure will allow it to self-fund certain investments intended to maximize growth potential, including organic and inorganic innovation initiatives, sales force expansion, and field inventory and instrumentation, without the need for equity financing.

**Leadership and Headquarters**

The combined company will be led by an experienced Board of Directors and leadership team that leverages the talent within both organizations.

7

Upon closing of the transaction, the combined company's Board of Directors will consist of nine directors, with five designated by Orthofix, including Lead Independent Director, and four designated by SeaSpine.

Jon Serbousek will serve as Executive Chairman of the Board, and Keith Valentine will serve as President and Chief Executive Officer and member of the Board. The remainder of the combined company's Board and leadership team will be named prior to closing and is expected to include representatives from both Orthofix and SeaSpine.

The combined company will be headquartered in Lewisville, Texas. This location will conduct general business, product development, medical education and manufacturing. The Company will retain primary offices in Carlsbad, CA, with a focus on spinal product innovation and surgeon education, and in Verona, Italy with an emphasis on product innovation, production, and medical education for Orthopedics. Current facilities in Irvine, CA, Toronto, Canada, Sunnyvale, CA, Wayne, PA, Olive Branch, MS, Maidenhead UK, Munich, Germany, Paris, France and Sao Paulo, Brazil will also be retained.

**Timing and Approvals**

The transaction is expected to close in the first quarter of 2023, subject to approval by both companies' shareholders and customary closing conditions and regulatory approvals.

**Advisors**

Perella Weinberg Partners LP is serving as financial advisor to Orthofix, and Hogan Lovells US LLP is serving as its legal counsel. Piper Sandler & Co. is serving as financial advisor to SeaSpine, and DLA Piper LLP is serving as its legal counsel.

**The Materially Incomplete and Misleading Prospectus**

24. On November 23, 2022, the Board caused to be filed a materially incomplete and misleading Prospectus with the SEC. The Prospectus, which recommends that Orthofix stockholders vote their shares in favor of the Share Issuance and the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Orthofix and SeaSpine; and

(ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Perella.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Orthofix and SeaSpine*

25. The Prospectus fails to disclose material information concerning the financial projections for Orthofix and SeaSpine.

26. For example, the Prospectus fails to disclose Orthofix's unlevered free cash flows from the second half of 2022 through 2031, utilized by Perella for its *Discounted Cash Flow Analysis*, and the underlying line items. *Compare* Prospectus at 88 (Perella "calculated the present value as of October 7, 2022, of the estimated standalone **unlevered** free cash flows . . . that each of Orthofix and SeaSpine was forecasted to generate for 2H' 2022E through 2031E") (emphasis added) *with id.* at 106 (disclosing Orthofix's Free Cash Flows over the projection period).

27. Additionally, the Prospectus fails to disclose the line items underlying the Company's and SeaSpine's respective: (i) Adjusted Gross Profit; (ii) Adjusted EBITDA; (iii) Free Cash Flow, in the case of Orthofix; and (iv) Unlevered Free Cash Flow, in the case of SeaSpine.

28. Moreover, the Prospectus describes the projections for SeaSpine as "risk-adjusted." Prospectus at 109. Yet, the Prospectus fails to disclose a summary of the risk adjustments made to SeaSpine's projections as well as a quantification of the risk adjustments.

*Material Misrepresentations and/or Omissions Concerning Perella's Financial Analyses*

29. The Prospectus fails to disclose material information concerning Perella's financial analyses.

30. With respect to Perella's *Discounted Cash Flow Analysis* of Orthofix, in addition to the unlevered free cash flows utilized, the Prospectus fails to disclose: (i) the projection metric to which perpetuity growth rates were applied to derive the terminal value and quantification

9

thereof; (ii) Orthofix's terminal values; (iii) Orthofix's cash, other investments, debt and net non-operating liabilities; (iv) the inputs and assumptions underlying the discount rate range of 9.75% to 10.75%; and (v) Orthofix's diluted shares outstanding.

31.  With respect to Perella's *Discounted Cash Flow Analysis* of SeaSpine, the Prospectus fails to disclose: (i) the projection metric to which perpetuity growth rates were applied to derive the terminal value and quantification thereof; (ii) SeaSpine's terminal values; (iii) SeaSpine's cash, other investments, debt and net non-operating liabilities; (iv) the inputs and assumptions underlying the discount rate range of 10.50% to 11.50%; and (v) SeaSpine's diluted shares outstanding.

32.  With respect to Perella's *Discounted Cash Flow Analysis* of the synergies expected to result from the Proposed Transaction, the Prospectus fails to disclose: (i) the projection metric to which perpetuity growth rates were applied to derive the terminal value and quantification thereof; (ii) the terminal values of the synergies; (iii) the inputs and assumptions underlying the discount rates ranging from 9.75% to 10.75%; and (iv) Orthofix and SeaSpine managements' estimates of the transaction-related expenses.

33.  With respect to Perella's *Selected Publicly-Traded Companies Analysis*, the Prospectus fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Perella.

34.  With respect to Perella's *Research Analyst Price Targets* analysis, the Prospectus fails to disclose: (i) the price targets observed; and (ii) the sources thereof.

35.  In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of Orthofix's Financial Advisor" sections of the Prospectus materially incomplete and misleading in contravention of the

Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Orthofix will be unable to make a sufficiently informed decision in connection with the Share Issuance and the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Orthofix**

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Orthofix is liable as the issuer of these statements.

38. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

39. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

41. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Orthofix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Orthofix and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Orthofix, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Share Issuance, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Prospectus that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 13, 2022  **ACOCELLI LAW, PLLC**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*

14